1869.]        STALEY, ADMX. v. DODGE et al. ADMRS.        43

Syllabus.    Opinion of the Court.

MARY Q. STALEY, Administratrix of the estate of
SAUNDERSON D. STALEY,

v.

CHARLES E. DODGE and ADA PEARSON,
Administrators of the estate of GEORGE T. PEARSON.

1. ATTORNEY AND CLIENT—*of the relation of trust and confidence.* An attorney,
in his relations as such with his client, is bound to disclose all the facts within
his knowledge, and cannot avail himself of any settlement obtained through
an undue advantage, by withholding facts in his possession as such attorney.

2. So, where an attorney is employed by one of the administrators of an
estate, to collect the debts due the estate, under an agreement that he should
look to the estate for the fees for his services in that behalf, and such attorney
obtains a settlement with the other administrator, without disclosing his previ-
ous agreement, such settlement, under which he was allowed to retain money
collected by him, will not be binding against the estate, and the money so
retained may be recovered as money in his hands belonging to the estate.

APPEAL from the Circuit Court of Sangamon county; the
Hon. EDWARD Y. RICE, Judge, presiding.

The facts in this case are fully presented in the opinion.

Messrs. BRADLEY & OLDEN, for the appellant.

Mr. JAMES W. PATTON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action brought by appellees, as administrators
of the estate of George T. Pearson, deceased, against Saun-
derson D. Staley, in the Sangamon Circuit Court. It appears
that Staley was employed as the attorney of appellees, to
collect monies due the estate of Pearson. He collected vari-
ous sums, and which he claimed the right to retain as a com-
pensation for his legal services, but appellees insisted he was

not entitled to it, and brought a suit for its recovery. After the suit was brought, and before plea pleaded, he had an interview with the appellee, Ada Pearson, at which, he insists, a settlement was made, which is relied upon as a defense.

Appellee Dodge swears that he employed Staley to prosecute and defend suits for the estate, and that it was, at the time, agreed that Staley was to look to the estate for his pay. The master in chancery testified that Staley had received of him, under a decree in favor of the estate, three hundred and forty-six dollars, money collected of Louisa Hosea.

A witness on behalf of Staley says that he had called on Staley, at the request of appellee, Ada, and informed him that she desired to see him at the Leland house ; that he (witness) had called upon her, and informed her that he had brought the suit against Staley ; that Ada was induced to come to Springfield in consequence of a notice published in a Detroit paper, that there was an estate of importance in which she was interested, and that her mother desired her presence in Springfield immediately.

Another witness testified that he was employed at the Leland house; that he was there when Mrs. Pearson was stopping at the hotel, and that he showed Staley to the rooms of Mrs. Pearson and her mother in the forenoon of the 12th of August, 1867; that he left after some time, but returned again in the evening of the same day, in company with Henry Carrigan, Sr., since deceased, and was again shown to her room ; that about three quarters of an hour afterwards witness was sent by her to have her bill made out, and as he was returning with the bill, it was proclaimed that all passengers going on the train for Chicago should get aboard ; that, on hastening to the room, he found Staley, Carrigan and Ada, all standing by a table in the room, and Staley was counting money to her, which she retained, and paid a part of it on her hotel bill, which was fifteen dollars; that he did not know the amount paid to her.

Staley was sworn as a witness, and testified that he called on Mrs. Pearson at her request, communicated through her attorney; that, at her request, he informed her that he had collected for the estate three hundred and fifty-five dollars, and that his account for professional services amounted to three hundred and fifteen dollars, and stated to her the cases he had prosecuted and defended for the estate, and that he offered to pay her the balance of forty dollars; that she said she would see her attorney and her co-administrator; that she sent for him again in the evening, and that when he called she said she had concluded to settle, if he would receipt his account and pay her sixty dollars, which he did; that in her hurry to reach the train, there was not time for him to write and for her to sign a receipt; that he had caused the notice to be inserted in the Detroit paper for the purpose of learning her address.

The court who tried the case by consent, without a jury, found the issues for appellees, and assessed their damages at three hundred and sixty-five dollars and twenty-six cents, and a judgment was rendered in their favor for that sum, to reverse which this appeal is prosecuted.

The relation of attorney and client existing between the parties, a settlement will be more closely scrutinized, than if the relation had not existed; Staley, as her attorney, was bound to disclose the entire state of the business which existed between them, and an examination of the evidence fails to show that he did. Dodge swears that when Staley was employed, it was expressly agreed that he was to look to the estate for his fees, and Staley, when on the stand, failed to contradict this statement. Failing to do so, we must conclude that it was true. Nor does he state that she was informed of that agreement. If such an agreement was made, he was, under it, bound to present his claim against the estate, and have it allowed by the probate court, and receive his pay in the due distribution of the assets of the estate. This was the scope of his agreement, and he therefore had no right to

retain the funds of the estate thus collected, and if he obtained an agreement from Mrs. Pearson that he should do so, it was, so far as we can see, by withholding the terms of the agreement from her. By doing so, he obtained an unfair advantage, which he could not retain.

He knew that he made the agreement with Dodge, who was alone attending to the administration of the estate. He knew that Mrs. Pearson had entrusted it to his care and management. He was unable to settle with Dodge, and, no doubt, believing that she knew nothing of the situation of the affairs of the estate, or the state of his account, or the agreement under which it was made, and that he could more readily get her to consent to a settlement on his terms, caused the advertisement to be inserted in the Detroit paper, which induced her to come to Springfield. It seems to have been planned with the view of obtaining an undue advantage in the settlement.

The evidence failing to disclose the fact that he, as an attorney, made that full, fair and complete disclosure to his client which the relation imposes, and even if there was no evidence from which other unfairness could be inferred, the settlement cannot be sustained, and he must be left to collect his fees through the probate court, in the due course of administration, according to the terms of his agreement.

The judgment of the court below must be affirmed.

*Judgment affirmed.*